Mr. Ford, next case please. 1442-42, 1535-95, Mamataz Ali Hussaini v. Loretta Lynch Loretta Lynch v. Loretta Lynch Loretta Lynch v. Loretta Lynch Your Honours, good morning. May it please the Court, I'm Christopher Heldt and I'm here for the petitioners. I'd like to reserve three minutes. This timely file petition for review comes to you from an IJ's denial of the petitioner's final request for continuance, seconded by the BIA, and later the Board's denial of petitioner's motion for reconsideration and reopening, based mostly on different grounds, namely the President's executive decision on immigration, which was made a day after the petitioner's appeal had been denied. A timely petition for review was also filed based upon that BIA decision. The petitioners are a husband and wife with two minor United States citizen children. They're known as a mixed status family, the parents having entered the United States lawfully but overstaying their temporary visas. Where are these folks from again? Pakistan. All right, that helps me remember which case. Actually, it's an excellent observation, Your Honour, because what country you're from really determines how long in line you have to wait for a visa. Right. So it's always something we look at, what country you're from, because if you're from China, Mexico, the Philippines, you're on a much longer wait list than the other countries. But if they are sent back to Pakistan, can they still proceed in this case? In theory, yes, they can proceed. But in practice, no, Your Honour, because they're subject. The catch-22 here is the minute the wheels of the plane take off at this point, they're subject to a 10-year bar. They have a final order of removal because they've pursued not only a BIA appeal but this current action which withdraws their voluntary departure, and that voluntary departure, which is a discretionary grant issued by the IJ below, is automatically converted into a removal or a deportation order. So practically, no, they can't just get on a plane, leave, wait for the visas to be current and come back because they're barred for 10 years. And that's something that's not their fault. It's just a creature. It's the operation of the law, which by many people have said is a broken immigration law. It's a broken system. Can they petition the IJ to change from a removal to a voluntary departure at this point? They already have a, no, they cannot. They cannot because the statutory construction, if you've taken voluntary departure, it's impossible. So aside from the American citizen children that the respondents have, they have a 9-year-old and a 5-year-old, the family has extended family ties here in the U.S., including the lead petitioner's father, who's an American citizen. The lead petitioner's sister is a United States citizen. And so the father, Your Honor, for many years had filed a visa petition for his son when the son was about 19 years old. That visa petition was eventually approved, but it was later revoked. The petitioners claimed no knowledge of ever receiving notice that the first petition was either approved or revoked later. The petitioners were placed in removal proceedings when on a family picnic up in Michigan. They were placed in removal. A new petition was filed by my office, by that same United States citizen father, on their behalf in 2008. The IJ in Memphis granted a request for a continuance while that new visa application was pending. And that same IJ also granted additional requests for a continuance while the I-130 was pending. And when the visa was approved, the IJ granted a further continuance. The IJ presiding over that case relocated. The I-130, is that adjustment of status? No, Your Honor, that's the visa petition. That's the visa petition that's filed by the United States relative, United States citizen relative, on behalf of the beneficiary. In this case, the petitioner, the son. Yeah, and I apologize for such rudimentary questions, but what benefit does that bring, your client, if he, or does that bring an alien? It doesn't give them the right to stay in the United States. And I've always been told, you know, they would say, for years, USCIS and judges, they would say, counsel, you have, you know, being in America is a privilege, it's not a right. We understand that. But if you have a benefit application. What is this I-132, though? Does this mean it's like a temporary visa? No, it's the actual visa. It's like, the way it was described to me years ago, it's like a sandwich. You have to have the meat and the bun, and both of them complete a sandwich. And you have to have the visa petition, which is primarily the petition that's decided by Department of Homeland Security. And then once that application is adjudicated, then you can file for your green card, which is the informal name for adjustment of status. Green card and adjustment of status are synonymous. And that application is an I-485. So the IJ initially had relocated, and a new IJ in Memphis was assigned to the case now. This IJ at the petitioner's final hearing refused both written and verbal requests for a further continuance. How many continuances were issued in this case so far? Prior to the denial, there were at minimum. I mean from the start to the finish, how many? Approximately. Five or six? No, not six, between four and five. But some continuances were requested by the government because they didn't have the file and there were other matters. But our written and verbal requests at minimum, there were four, probably five. I'm sorry, finish any answer you have to Judge Seiler. Yes, thank you. There seems to be some dispute about whether your client is ultimately eligible for adjustment of status. And at least as I understand the government's argument, they're saying he actually is not eligible because he's worked in the United States without authorization. What's your response to that? He's absolutely eligible for adjustment of status under 245I, which the government initially said he was not eligible for, which was a provision in the law which allowed individuals to come out of the shadows, to participate in the economy, to pay taxes, to obtain work authorizations for this type of application. They would pay a penalty of $1,000. This is written into the law, INA 245I. The intention of that law was to include individuals like the petitioner who, although today have work authorization, he has it because he does have this pending I-485. At the time, he had acknowledged he was working without authorization. Now, we submit it to Red Herring because the law covers, in particular, specifically embraces individuals like that. This is what the law is there for, for individuals who have worked without authorization or who had come into the United States from the get-go illegally. The minute they've touched foot on U.S. soil, they were not authorized to do so. 245I protects those individuals, and it also protects individuals like our petitioner, who came in here with the permission and consent of the U.S. government, but overstayed that temporary visa. What about 1255C? Does that apply to your client? 1255A is the adjustment. 8 U.S.C. 1255C, I thought, is the government. I could be wrong. The government, I thought, is saying that makes your client ineligible because of working without authorization. I could be wrong. Well, presuming it is. I'm talking U.S.C. sites. Yes, I understand. That's still the adjustment of status statute. We're talking about the same section. Yes. You're citing I, but the government is saying C is what's applicable here. Why don't you explain to us what you think C and I are, or C? Well, C, if it encompasses, it's the adjustment of status statute, and if it discusses working without authorization, I'm not going to dispute that, but I would only say that that would not apply to this petitioner because this petitioner, by the government's now recent admission, when they withdrew their argument, he's eligible under 245I. So if he's eligible under 245I, that trumps any other provision which would otherwise bar him entering illegally. Is that what the government said? It's not arguing anymore? Yes, but they say, not to argue for the government, but they say regardless of that, it's speculative. And this is the core of our argument, because a statement of the obvious, that a visa petition is approved, does not make it speculative. Speculative is something where a visa petition is filed and unadjudicated, whether it's a job-based or a family-based. I don't know how a visa can be speculative if it's approved. Is it approved? It has been approved, and it was approved. Husband and wife? Husband and wife, the visa petition has been approved, the I-130. Is the speculative thing when it will actually, their time in the queue will come up here and they'll actually get the visa? I don't know. You'd have to ask the government. I'm trying to understand that, because I have not seen the case law that says speculative means a visa that's approved, but yet through no fault of their own, the visas are not ripe. Like the fruit of the tree, it's not ripe yet. And it's not a fault of the petitioners that the visa is not ripe. I checked this morning, and the government alleges that the wait time is six years away. It appears that as of today, this visa initially was filed in May of 2008. As of today, they're working on visas in August of 2004. So you're looking at a little less than four years away. And every month the State Department issues these visa bulletins, and you look and we look, and we painstakingly see if our clients are eligible for visa priority dates. That might change. That might change. Apparently it's changed already when you check. It has, and it will change in the future, but there's no guarantee it may regress. There are some situations, Your Honor, where visas, you think they're going to be ready next month, but they regress a month or two. So it's your position that you just hold off until they finally make a ruling, even if it's 10 years or 20 years? Well, no. Our position is that the rug should not be pulled under from you from situations that are out of your control. You've taken advantage of the law under 245I. You filed a family-based or a job-based visa petition, but now you find yourself in removal proceedings. You're requesting a continuance. The I.J. has a number of options, a number of arrows in his or her quiver to choose from today. Years ago, we didn't have things like administrative closure. What does administrative closure mean? Administrative closure in the BIA decision is a matter of a vizian. The I.J. has now the authority, as of a few years ago now, to administratively close the case, even over the objection of DHS. So if the I.J. is not happy with the long, and let me say first, Your Honor, that the overarching issue is not only the one presented in our opening briefs, it's not the counter issue that was presented by the government, and it's not the issues necessarily that have been argued by the parties. The overarching issue that is this dark cloud over all of these cases is the tremendous backlog in the immigration courts today. It's tough to blame a judge for looking and becoming almost fixated with the wait times, but this is something which is a statement of the obvious, and case law does not support such a finding. Even if it did, the I.J. must balance the positives with the negatives, and to pull the rug out from a family, a mixed-status family, without addressing these issues that we brought both orally and in writing, is an abuse of discretion. I'm not here to say we should have a bucket list of items that an I.J. should look at which constitutes an abuse of discretion. I think it would be unfair to put limitations on the judge because I have asked for continuances on lesser, stronger points, different points, but sometimes they're granted, sometimes they're not. But I do know that the judges have this wide discretion. But to deny a continuance when the case law supports other types of an analysis is really clearly an abuse of discretion, and the BIA seconded it by not even discussing the matters that we brought up. And then the next day we had the president announce his executive decision on immigration. Well, I'm not sure what that has to do with what we're talking about. Well, it's a relief. It's a benefit application, so we asked the BIA to consider it. Now we know, okay, thank you. I'm not presiding, but... Well, I would like to say we know where that is, and it's going to be before the U.S. Supreme Court. But nevertheless, it was a benefit application. The BIA was wrong because they focused on that being a decision of Homeland Security, and it's not. It's a benefit application. We'll hear it. We got that. No run-on sentences. Thank you. Thank you, Your Honor. That started a new one, I think. All right, thank you, counsel. May it please the Court. I'm Christina Greer on behalf of the United States Attorney General. There is one issue in this case, and that's the agency acted well within its discretion when it denied petitioners' motion for a continuance of their removal proceedings to await relief that would not be available for perhaps approximately six years in the future. The standard the Court is using here, the abuse of discretion standard, is highly deferential. The Court will find that in denying the final continuance, the agency provided a lengthy and rational explanation that the decision was in line with its policies and precedent and that the decision rested upon permissible bases. Here, three immigration judges conducted six master calendar hearings and three individual hearings over the course of five years, continuing the case in total six times at petitioner's request to apply for visas, to investigate and document the lead petitioner's claim to U.S. citizenship that turned out to be contrary to law, to document and argue eligibility for adjustment of status based on recapturing that old priority date from the first visa application, which turned out to be contrary to regulation, and to seek prosecutorial discretion from DHS. After giving petitioners every opportunity to document and argue the claims that would lead to immediate relief or a lack of jurisdiction, for example, if the lead petitioner were a citizen, the Court would lack jurisdiction for the proceedings entirely. The only potential for relief remaining was an adjustment of status application six years in the future, potentially. The immigration judge concluded that yet another continuance was not warranted because the length of time until visa availability rendered this claim to adjustment of status speculative. What's your position on the likelihood of an adjustment of status being granted in due time? Do you think it's pretty good or not so good? It's impossible to say at this point. For one thing, as the board and the immigration judge noted, petitioners did not submit a complete application. One of the requirements for adjustment of status is to establish that the applicants are not inadmissible under 8 U.S.C. 1182. One of the grounds of inadmissibility there is the public charge ground. To overcome that, the agency requires that applicants submit what's called an I-864. It's an affidavit of support showing that there is somebody in the United States willing to take financial responsibility for this person if they end up taking means-tested public benefits. Petitioners here did not submit that form, so they did not submit a complete application. It's impossible to tell. Plus, there's a question of discretion. It's possible there may be crimes that occur between now and then that could be disqualifiers. There hasn't been any criminal activity. These folks haven't done anything like that so far, right? Correct, as far as we know. If somebody invoked that as the reason for turning them away, that might well be an abuse in this case. Obviously, this stuff is so complicated, and you all are experts. The immigration judge said these folks do have an approved I-130 visa application, right? Correct. They've got that, but they don't get the visa until their turn in the queue comes. Is that correct? That's correct. And we don't know when that will be. But when they get that visa, let's say they got that visa in a week, hypothetically, or some other similar couple did, what does that visa then entitle them? What rights does it give them? Nothing. Okay, what's the purpose of the visa? The purpose of the visa is so that then an individual can either enter the United States, so they would then present themselves at the border and say, I have an immigrant visa that allows me to enter the United States as a permanent resident. It gets you in the country. Correct. And once you are in the country, which is another process, then you do have the benefit of living here. You have certain protections against removal that people who are not permanent residents don't have. And adjustment of status is a facsimile of that process in the states, so that way you don't have to leave and then reenter. Is the I-130 what we're calling adjustment of status, or is that different? It's a different process. The end game that they want to get to here? Yes. Adjustment of status. So just tell me if I'm understanding the debate here. I should know better than this. But the I-130, is that like fictionally admitting them lawfully now to the country? The I-130 is saying that the relationship between these two individuals is one that, once a visa is available, would qualify them for that visa. So it is establishing the family relationship. It's saying that lead petitioner's father is a U.S. citizen, and so he qualifies under the preference three category for a visa once it becomes available. He can, in a sense, come here lawfully because his father is sponsoring this visa. He's allowed to enter the United States lawfully. Is that right? In a fictional sense? Yes. The only other hurdle is actually entering because there are still several stages of review, and that's analogous to the adjustment of status process in the United States. I guess what I'm driving at is my rough sense of this, and I just want to know if I'm wrong, is the I-130 gets them in a position where their status is cleaned up enough, so to speak, that they can seek a green card adjustment of status, and that itself is discretionary. Is that a fair sort of rough description of the situation here? In a sense, the only—there is one—so the I-130 establishes the relationship, but it does not vet the actual applicant. The father and husband, the son here. Yes, but it does not vet the applicant in any way as to whether that person will, in the end, qualify to enter the United States or qualify to adjust status. Okay. So it's two hoops they'd have to get through, this sort of fictional entry. What things would they have to show to be able to get the fictional entry part? To adjust status, the person has to show that, well, one thing, that the visa is available, and one reason why the visa here is termed speculative is because at the time of the hearing in 2012, it would not be available for six years, and the relationship must still be existent, and that person must still be willing to petition for that person or for the applicant. But also the individual must demonstrate that he or she is not inadmissible to the United States as a public charge. There is a medical exam that must be conducted, fingerprints, which are run by DHS, as well as discretion, and those are the basic requirements. And actually, speaking to a question that you had earlier about 1255C, that applies when somebody is adjusting status under 1255A. It states that they are not eligible to adjust if the person has worked in the United States unlawfully or has stayed here in a period of unlawful presence or without valid status. That does not apply where 1255I or 245I applies. So that sort of waives the issues under 1255C. Okay, so the I-130 says, yep, he's your father, he's a U.S. citizen. Yes. That's kind of what that does. Then they have to pass a bunch of threshold stuff in order to be allowed to enter, quote, unquote. You don't have some horrible disease. You're not going to be a public charge. It doesn't look like that sort of thing. And then there's an additional discretionary determination about whether they should get adjustment of status. Yes. That's kind of where we're at. Okay, that's helpful. And you're not arguing anymore that he's ineligible for adjustment, I suppose, because he worked without authorization, is that correct? That's the one you've withdrawn? That's correct. Okay. Now it didn't, looking at the board's decision, the first decision from November 21st, 2014, it's the second page of the decision, which is at page 92 of the administrative record. The board actually upheld the IJ's decision on two grounds. The first one was that in the light of the apparently long wait for visa availability and failure, that was the first one, so that it's speculative that relief will be available even six years in the future. The second was failure to otherwise establish prima facie eligibility for adjustment of status, which goes toward looking at the previous paragraph stating that the applicants did not file a complete adjustment. And then the board goes on to say, and it appears they may not be eligible, but that's not the crux of the board's decision. It's that the applicants had not, or the petitioners had not established prima facie eligibility through submitting a complete application. And so even though that portion of the decision was incorrect about the may not be eligible based on, and it says inter alia having worked in the United States without authorization and having failed to maintain their status, the overall crux of the board's argument is the long time until visa availability and not having submitted a complete application for the court to review. And the board's decision is firmly based on case law. In matter of Raja, the board stated that even if an applicant has a prima facie approvable visa application and adjustment of status application, that the court should consider how long it will take until visa availability. And there the question was citing a case where the visa would be available two years from the date of application. Here it was six years. Is that a board case or one of our cases? The case, so matter of Raja was a board case. And it cited an 11th Circuit case, CHACU, which was the one where the visa was not yet granted but the priority date would be only two years away. I mean, I guess your point is this is discretionary. I mean, it's discretionary how they're going to manage their docket, how many continuances. I mean, these folks probably would have a shot at ultimate relief, but it's speculative, I guess, as to when, and it's not clear in your view that they would have favorable exercise of the discretion regarding adjustment. Correct. Is that okay? That's correct. Do you agree with opposing counsel that they can't continue this case if they're removed back to Pakistan, so that's the end of their case? Not necessarily the end of their case. They can come back, although he was – Subject to the 10 years? Subject to the 10 years, but there's a waiver of that where an individual can show that the failure to allow the family or member to return would result in extreme hardship on a U.S. citizen or lawful permanent resident parent or spouse. Here, petitioner has a U.S. citizen parent and so could qualify for that waiver. There would be a second hurdle, which is the fact that because – so the 10-year bar is actually – it results from petitioners having more than a year of unlawful presence here. So once they leave, it triggers this 10-year bar to them returning. It's called the unlawful presence bar. However, because of the removal order that's been put in place now, they will also have a five-year bar. Is that consecutive? It is. Oh, no, it's concurrent. But that bar can also be waived through another application that is essentially very similar to – but it would be too cruel. Yes, and even extreme hardship is more than normal hardship but is not so high that it's difficult to get over the bar. In immigration, there's another standard that's exceptional and extremely unusual hardship that goes to a much higher level. So the extreme hardship waiver would be something that they could apply for to come back once that visa is available. And perhaps with, as petitioners' counsel stated, the visas being available in 2005, if leaving now, by the time they'd be able to come back, the five-year bar may be even gone, and it may only be the 10-year bar that they would have to apply to waive. And so if the court has no other questions, then I would like to conclude by requesting that the court deny this petition for review. Thank you. Thank you. Thank you, counsel. I have three final points I'd like to make. One is that we were not requesting adjustment of status before the IJ. We were requesting a continuance, demonstrating we were prima facie eligible because we had an approved – at that point, we had an approved visa petition. The I-130. The I-130. That seems to be common ground that you had that. Absolutely. And I was the attorney of record for shock out of the 11th Circuit. That was an entirely different matter. That was a labor-based application. It wasn't a family-based visa petition. There was questionable speculation. Hindsight's 20-20. But this is a family – this is a slam dunk. Unless the U.S. citizen father is not his father, he will become a green card. In fact, the previous I-130 petition, which was approved then revoked, demonstrates that. It's the same petitioner, same application just filed years later. The I-864 is a form. It's a two-page document which shows the financials. It's not required. It's certainly not required at the stage of this case when the adjustment of status couldn't even be filed because, of course, the visas were not current. The prima facie eligibility is key here because we requested a continuance based on an approved visa petition. So for the IJ not to consider the other positives in this case, which are clearly evident in the record because you see it both written and orally, was an abuse of discretion. We're not saying necessarily that the IJ must grant a continuance, but we're asking that the IJ should look at certain factors. Presuming they go overseas to Pakistan, they have two U.S. citizen children. You're asking these individuals to uproot their family simply because of this. Are these the circumstances that would qualify this for the label abuse of discretion? Not necessarily, Your Honor, but these are the circumstances we wanted the judge to consider and at least discuss in her opinion. And as this court has ruled last month, and I believe you were on the panel, the court found in Guts v. Lynch that the BIA failed to consider certain arguments in making their conclusion. And because of that, it amounts to an abuse of discretion. So again, we're not asking the court to create this bucket list of items, one that you just mentioned. But we're asking in these situations where it's a close call, when you have positives that potentially outweigh the negatives, you consider them. The only thing that makes it less of a close call, I would suggest, is the numbers of continuances and the numbers of years that went by as this went through the system. But that's the overarching issue, I think, that Star Cloud is, the backlog. Actually, I don't mean the backlog. I mean the procedural history of this claim. It's very common with many cases like this. They languish for years and years and years. Real quick, the government argued he's ineligible for adjustment because he worked here illegally. Government withdraws that. Did the IJ or the board in any way rely on that rationale? They did, and the government just elaborated on that. So now we know that they're wrong. The BIA was flatly wrong. All right. Thank you. Thank you both for your argument. And we'll look at your case and we will issue an opinion. Thank you.